E. L. Balz, Appellee, v. A. Coquillette, Appellant.

HABEAS CORPUS: Scope of Inquiry—Commitment to Grand Jury—
1 Review. One held to answer to the grand jury under a state of
facts which constitute no crime, will be released on *habeas corpus*.
Evidence reviewed, and *held* to justify an order releasing the
complainant.

INSURANCE: Criminal Law—False Reports—Statute—Construc-
2 tion. Sec. 1641-g, Sup. Code, 1913, punishing the making of false
reports for the purpose, etc., of inflating the apparent value of
shares of stock, has manifestly no application to the making of
reports concerning the financial operations of a fraternal bene-
ficiary association organized under Chap. 9, Title 9, Code, 1897,
such associations *having no issue of capital stock.*

*Appeal from Superior Court of Cedar Rapids.*—C. B. Robbins,
Judge.

Thursday, January 13, 1916.

The opinion states the case.—*Affirmed.*

*G. P. Linville,* County Attorney, and *Rickel & Dennis,*
for appellant.

*Grimm & Trewin,* for appellee.

Weaver, J.—The plaintiff herein, E. L. Balz, is the secre-
tary of an insurance benefit association known as The Modern
Brotherhood of America. On September 28, 1914, a pre-
liminary information was filed before one
Nugent, a justice of the peace at Cedar
Rapids, Iowa, charging that Balz, in pub-
lishing a report of the expenditures of the brotherhood for
the month of August, 1913, included therein an item reading
as follows: "Field expense, sundry amounts as per itemized
statement, $27,405.47"; that the statement so made was false;
that the sum so indicated had not been paid out for field
expenses; and that the report was so published, falsely and

corruptly, with the intent to deceive and mislead the members of the brotherhood, as well as the public generally. Upon this information, a warrant was issued, and Balz arrested. After hearing the evidence offered, the magistrate overruled a motion for the discharge of the accused and found that there was sufficient ground for holding him to bail to await the action of the grand jury, and entered an order accordingly. Thereupon, the accused sued out a writ of habeas corpus from the superior court of Cedar Rapids, and, after a hearing and examination of the case, the court found that the charge was not sustained by sufficient evidence, and ordered the petitioner discharged. From this order, the proceeding has been brought to this court by the defendant, in whose custody Balz was placed by the committing magistrate.

The section of the statute with a violation of which the appellee was charged reads as follows:

"Sec. 1641-g. Every director, officer or agent of any corporation or joint-stock association, who knowingly concurs in making, publishing or posting, either generally or privately to the stockholders or other persons, any written report, exhibit, or statement of its affairs or pecuniary condition, or book or notice containing any material statement which is false, or any untrue or wilfully or fraudulently exaggerated report, prospectus, account, statement of operations, values, business, profits, expenditures, or prospects, or any other paper or document intended to produce or give, or having a tendency to produce or give, the shares of stock in such corporation a greater value or a less apparent or market value than they really possess, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary not to exceed one year, or by imprisonment in the county jail not to exceed six months or a fine not exceeding five hundred dollars."

Stated briefly, the facts are as follows: The petitioner, as secretary of the Modern Brotherhood, prepared a statement of the financial operations and condition of that organization

covering the month of August, 1913, and published the same
in a journal which is issued at regular intervals in the interest
of the brotherhood. Under its plan of business, the brother-
hood appears to have maintained a general fund upon which
orders were drawn for the payment of expenses, such as sal-.
aries of officers, clerk hire, supplies, legal expenses, field work
and other purposes pertaining to the general management of
the corporate affairs. This general fund was carried in a bank,
which accounted to the brotherhood or its treasurer for
interest at the rate of 2 per cent. on daily balances. The
receipts for the credit of the general fund for the month of
August were $73,294.67, and this item was incorporated in
the published statement. Against this fund, the secretary, in
an itemized statement known as Exhibit 2, reported a "List
of Orders Drawn on the General Fund from August 1, 1913,
to September 1, 1913." In this list, under the head of "Field
Expenses", is an extended statement of orders drawn, most
of which were comparatively small amounts, amounting in the
aggregate to $2,405.47, and closing with the single item, "A. H.
Gale, $25,000", making a total of $27,405.47. A. H. Gale
was the treasurer of the brotherhood. The explanation of this
statement is that the actual expenses incurred for field expenses
during that month amounted only to the first named sum,
$2,405.47; but the further order of $25,000 was drawn on
account of future or anticipated expenses, for the purpose of
taking it out of the general fund, where it earned, as we have
said, only 2 per cent. interest on daily balances, and placing or
investing the same in certificates of deposit, in which form a
more remunerative rate of interest could be obtained. This
deposit was represented by five certificates of $5,000 each, the
theory of the transaction evidently being that, when the money
was required for field work, the certificates could be cashed
one at a time as needed. The money had not, in fact, been
expended, nor were the assets of the brotherhood decreased or
impaired by said amount of $25,000, or any part thereof; but
of necessity, the order upon the treasurer, by means of which

this sum was taken or transferred from the general fund and thereafter carried in the form of certificates of deposit, appears in the account of orders drawn, and the treasurer was entitled to credit accordingly. The facts concerning this transaction do not appear in the published report with the fullness or in the closely consecutive order in which we have here stated them; but they do appear with sufficient particularity to make it plain to the ordinary understanding that there was no attempt to deceive or mislead the brotherhood or the public as to the truth, and also to make it clear that the brotherhood and its membership had in no manner been wronged. By whom this method of holding the funds and keeping the brotherhood's accounts was planned or authorized does not appear; but, so far as shown, the books were kept and the acts of the secretary in the management of his office were strictly within the scope of the duties which had been imposed upon him; nor can it be said that, when his published statement is fairly read as a whole, it states anything more or less than the literal truth, so far at least as relates to the single item which the preliminary information denounces as false.

It follows of necessity that, even if we assume that the statute in question has any application to a case such as the state here attempts to make, there is such a manifest failure of proof that the court below was clearly and unquestionably right in sustaining the writ of habeas corpus and ordering the petitioner discharged.

Moreover, we are fully persuaded that, if the evidence fairly sustained the charge made in the preliminary information, it would constitute no ground for prosecution or punishment under this statute. A reading of the 2. INSURANCE: criminal law: false reports: statute: construction. section shows that it is made up of a single sentence, in which punishment is provided for the act of any officer or agent of a corporation or joint stock association for knowingly making, publishing or posting false reports of its pecuniary

condition or business affairs or operations "intended to produce or give, or having a tendency to produce or give, the shares of stock in such corporation a greater value or a less apparent or market value than they really possess". It appears, without dispute, that the brotherhood is a fraternal beneficiary association organized under Chapter 9, Title 9, of the Code and amendments thereto, not for pecuniary profit, and wholly without capital stock or stockholders. It issues no shares of stock. No share or interest therein can become a matter of barter, purchase or sale in the markets, and nothing appearing in the secretary's published report could "produce or give, or have a tendency to produce or give, the shares of stock in such corporation a greater or a less apparent or market value than they really possess". Criminal statutes are not to be given any forced or unnatural construction in order to bring within their scope acts or conduct to which they are not clearly and fairly applicable. We are well satisfied that the matters complained of in' the preliminary information constitute no public offense under the statute upon which the state places reliance.

The petitioner was properly discharged, and the order and ruling of the trial court are—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.